**Barbara Y. SETTLE, Plaintiff,**

v.

**William H. BROWN III, Chairman, Equal Employment Opportunity Commission, et al., Defendants.**

**No. 72–H–716.**

United States District Court,
S. D. Texas,
Houston Division.
July 14, 1972.

David T. Lopez and Eric H. Nelson, Houston, Tex., for plaintiff.

Anthony J. P. Farris, U. S. Atty. (Olney Wallis, Asst. U. S. Atty.), Houston, Tex., George H. Darden, Washington, D. C., and Max Fuentes, Jr., Houston, Tex., for defendants.

SEALS, District Judge.

Plaintiff, an employee or former employee [1] of the Equal Employment Opportunity Commission, initiated this action on May 31, 1972, to restrain Defendants, officials of that agency, from terminating her employment prior to an administrative determination of the merits of her discharge. Defendants almost immediately responded with a motion to dismiss, and it is that motion which is presently before the Court.

## I.

Plaintiff was employed by the Commission at its Houston, Texas, District Office on September 20, 1971, at the grade of GS–9. Plaintiff soon thereafter began to complain to the EEOC that she was being unfairly denied an equal opportunity to advance to the GS–13 and GS–14 levels. On April 3, 1972, Defendant McClees, District Director of the EEOC, advised Plaintiff by letter that her probationary employment with the Commission had been terminated. McClees set forth in his letter a number of grounds for the action, but he did not advise Plaintiff regarding any appellate procedures. Furthermore, he indicated that the separation was "effective immediately," and directed Plaintiff to "forthwith surrender" all Government property in her possession. McClees subsequently amended the effective date of Plaintiff's termination to April 15, 1972. On April 7, 1972, McClees advised Plaintiff, again by letter, that his previous letter of April 3 (which, after amendment, had set the date of separation of April 15) had been cancelled.

On April 7, 1972, Defendant Krueger, Personnel Director of the Commission, informed Plaintiff by letter that she would be separated from her employment on April 28, 1972. Krueger's letter reviewed the reasons for Plaintiff's discharge and advised her of the appeal rights available under the federal personnel regulations. The effective date of Plaintiff's termination was later extended to June 1, 1972.

On May 31, 1972, Plaintiff filed the present action in this Court. The Court met with Plaintiff, several of the Defendants, and all counsel on the afternoon of June 1.[2] After hearing extensive argument from both parties, the

---

1. Since the efficacy of the Court's temporary restraining order is in doubt, see infra, Plaintiff's status is open to question. That issue will not be resolved here.

2. The Court was engaged at that time in a six week criminal trial.

Court took under advisement Plaintiff's request for a temporary restraining order.

On the following day, Plaintiff filed an amended complaint, and the Court, without further notice to the parties, entered a temporary restraining order in Plaintiff's behalf, effective at 4:30 p. m., June 2, 1972. The order prohibited Defendants from terminating Plaintiff's employment and from interfering with her continued employment. Defendants took the position at that time, and have continued to maintain, that Plaintiff had been separated prior to the entry of the restraining order, that there was no remaining act necessary to complete that termination, and that, consequently, the Court's order was without effect.

As a result of a second conference with counsel, the Court, on June 5, 1972, deleted from its temporary restraining order that language which prohibited Defendants from interfering with Plaintiff's continued employment. The remainder of the order was continued, however, and, with the reluctant consent of the Government, it was subsequently renewed on June 10, June 20, June 30 and July 7. The present order expires on July 17, 1972.

## II.

■ Defendants have moved to dismiss on a number of grounds, two of which may be quickly disposed of. Defendants assert first that the United States has not given its consent to be sued. It is well established, however, that the doctrine of sovereign immunity does not apply to situations where Government officials act beyond their statutory powers, or exercise their authorized powers in a manner which is constitutionally invalid. Dugan v. Rank, 372 U. S. 609, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963). One of Plaintiff's fundamental contentions is that Defendants have, in discharging her, acted in violation of federal regulations. To effect dismissal on the basis of sovereign immunity, Defendants must establish that which is the very crux of the case: whether De-

fendants acted beyond the scope of their statutory authority. In short, "sovereign immunity" is, in the present context, not a very useful concept.

■ The doctrine of exhaustion of administrative remedies presents a somewhat more formidable obstacle to Plaintiff's chance of success. As the Court of Appeals for the District of Columbia Circuit recently observed in Murray v. Kunzig, 462 F.2d 871 (1972), however, exhaustion of administrative remedies is not a real issue where a plaintiff seeks interim relief pending an administrative determination on the merits. "Such interim relief," said Judge Wilkey,

> "is not the interference with agency actions which the exhaustion of remedies doctrine seeks to prevent, but instead often serves as an aid to the administrative process, since by preserving the status quo it ensures that the final administrative determination will not be undermined or rendered ineffective by hasty or incorrect procedures at an earlier stage." Id., at 875 of 462 F.2d.

■ It is also reasonable to argue, as the Court of Appeals notes, that Plaintiff has already exhausted her administrative remedies, because there is no administrative body to which she may apply for interlocutory relief. Id., at 875 of 462 F.2d (fn. 12). The Civil Service Commission, to whom an aggrieved employee may appeal his discharge, has no authority to grant a stay of the agency's determination. The employee must look for interim relief to the only place where it is even possibly available—the federal district court.

Were the Court to hold a hearing on Plaintiff's request for a temporary injunction, Plaintiff would be obliged to demonstrate the probability that irreparable harm to her will result if she is denied a temporary injunction. In most cases, as the majority acknowledges in Murray v. Kunzig, supra, the Back Pay Act of 1966, 5 U.S.C. § 5596, provides a complete safeguard for the rights of a

discharged employee. In the exceptional case, however, where the employee is able to show great hardship, he should not be precluded from obtaining relief. *Id.*, at 877 of 462 (fn. 21).

But the question of irreparable harm need not concern the Court in the present case. For the Court is convinced that Defendants have here substantially complied with applicable federal regulations.

### III.

■ It is well established that judicial review of an administrative agency determination is limited to an examination of whether the agency complied with prescribed procedure in making the determination. Frommhagen v. Klein, 456 F.2d 1391 (C.A. 9, 1972). Plaintiff makes two principal contentions regarding Defendants' conformity to the regulations: 1) that Defendants failed to provide Plaintiff with the proper notice; and 2) that her discharge constituted an act of reprisal for her pursuit of an Equal Employment Opportunity complaint against the Commission.

■ The correct procedure for terminating a probationary federal employee [3] is prescribed in 5 C.F.R. § 315.804.[4] The next section of the regulation, however, specifies a more stringent procedure for application to those probationary employees whose termination is proposed for reasons based in whole or in part upon conditions arising before his appointment, 5 C.F.R. § 315.805.[5] Neither party contends that Defendants have failed to provide Plaintiff with the notice contemplated by § 315.804. Plaintiff maintains, however, that she was discharged for reasons based in whole or in part on conditions arising before her appointment, and that, as a result, she was entitled to the special notice provisions of § 315.805.

Defendants vigorously deny that Plaintiff's termination was in any way grounded upon factors arising prior to her employment. Were a hearing deemed necessary, Plaintiff's success would depend in large measure upon her ability to demonstrate a relationship between her pre-employment activity on behalf of women's rights and her recent discharge. For purposes of the present motion, however, the Court will presume, without specifically finding, that Plaintiff has shown some such causal connection. The next inquiry is then whether Defendants complied with the procedure prescribed in § 315.805.

That section requires 1) "advance written notice stating the reasons, specifically and in detail, for the proposed action"; 2) a reasonable time for the employee to file a written answer, together with the instruction that the agency consider any answer which the employee files; and 3) written notice of an adverse decision "at or before the time the action will be made effective," which notice should include information about the employee's right of appeal. The Court is convinced that Defendants have substantially complied with these directives.

The letter sent to Plaintiff by Defendant McClees reasonably fulfills the first of the requirements. McClees stated therein the reasons for Plaintiff's termination, "specifically and in detail." The only significant deviation from the terms of the regulation is McClees' statement that Plaintiff's separation was "effective immediately." McClees should have made clear that he was merely proposing, rather than ratifying, Plaintiff's discharge. The letter was, however, cancelled a few days later.

---

3. A probationary employee is one who has been employed for less than one year. 5 C.F.R. § 315.802(a).

4. The employing agency must give written notice of the reasons for discharge and specify the effective date of the action.

5. The "condition" in the present instance, according to Plaintiff, consists of her activist role in the women's rights movement.

The purpose of the advance notice provision is obviously to initiate the process of termination, to furnish to an employee the information that his future employment is in imminent jeopardy, and to explain to him the reasons therefor, so that he may attempt to refute the charges. The April 3 letter from McClees to Plaintiff, however inartfully worded, was sufficient to accomplish this purpose, and the Court thus finds that it satisfies the first step of the three-point procedure specified in § 315.805.

Although Plaintiff does not reveal to the Court whether she ever submitted a written response to Defendant's charges, she has had an ample opportunity to do so. Plaintiff first became aware of her pending separation during the first week of April, and yet she was allowed to remain on the payroll of the Commission through June 1. The regulation does not compel an employee to answer. It merely holds that, if the employee desires to reply, he is "entitled to a reasonable time" to do so.

This second requirement seems aimed at preventing an employee's discharge until he has been granted the opportunity to present his position to whoever will make the ultimate decision within the agency. Plaintiff has not alleged that her views are unfamiliar to Defendants. From a reading of Plaintiff's second amended complaint, it is clear that Plaintiff, through negotiations conducted between April 3 and June 1, adequately conveyed to Defendants her response to their actions. The Court is satisfied that Defendants have substantially complied with this second step of the necessary procedure.

Substantial compliance with the third step was effected by Defendant Krueger's letters to Plaintiff of April 7 and April 25. In the earlier letter, Krueger "inform[ed] the employee of the reasons for the action, * * * [her] right of appeal * * * and * * * the time limit within which the appeal must be submitted * * *." In the letter of April 25, Krueger extended Plain-

tiff's termination date to June 1, but he reaffirmed the reasons for separation and the appeal rights specified in the earlier notice.

Scrupulous compliance with the applicable regulations would have obliged Defendants to furnish Plaintiff with an additional written notice on or shortly before her June 1 separation date. But one may with some justification question the value of requiring strict adherence to every detail. Defendants were operating on the assumption that Plaintiff was entitled only to the notice provisions of § 315.804. But in the course of a two-month process of separation, they managed substantially to fulfill the stricter instructions of § 315.805. The Court finds that Plaintiff has been effectively furnished with the procedural safeguards detailed in that section.

Plaintiff's second principal contention regarding Defendants' conformity to the regulations is that her discharge constituted an act of reprisal aimed at her pursuit of an Equal Employment Opportunity complaint against the Commission, in contravention of 5 C.F.R. § 713.-214(b). Plaintiff filed her formal complaint against her employer on April 6, 1972, three days after Defendant McClees sent Plaintiff the first notice of her impending termination. Plaintiff alleges, however, that she had begun to complain of discrimination as early as January, 1972.

As soon as an employee voices such dissatisfaction, the "counseling stage" described in § 713.213 may be considered to have begun. Throughout the counseling stage, an employee is entitled to the protection of § 713.214(b), and thus, any act of reprisal is prohibited during that period.

It would thus appear that the Court must make a factual determination regarding whether Plaintiff's discharge was in any way the result of her EEO complaint. But such an inquiry will not in fact be necessary, because judicial review in the present proceeding must be "limited to an examination of whether the required procedural steps

have been substantially complied with." *Frommhagan,* supra, 456 F.2d 1391, at 1393. However meritorious Plaintiff's charge of retaliation may prove upon ultimate consideration, it is clear that the issue is not before the Court in the case at bar.

In the first place, "retaliation" addresses itself to the reasons for Plaintiff's termination, and thus, constitutes a matter of substance. Substantive matters must, as a general rule, be resolved by the Civil Service Commission, before which Plaintiff's case is now pending. It may be objected that the question of whether Plaintiff's discharge was based in part upon pre-employment factors—fundamentally a substantive issue—has already been acknowledged a proper subject of inquiry. Disposition of that issue is necessary, however, only as a preliminary matter, in order to determine which kind of procedure was binding upon the employer.

An examination into the merits of a charge of retaliation, on the other hand, bears no relation to that which is the only subject now properly before this Court: whether Defendants complied with the proper procedures in terminating Plaintiff's employment. Not only may the alleged retaliation be examined by the Civil Service Commission in its disposition of the merits of the whole case, but, in addition, that issue should be resolved as a part of Plaintiff's EEO complaint filed on April 3. The scope of the present review simply does not permit the type of substantive investigation contemplated by § 713.214(b). The Court concludes that it is without jurisdiction to consider Plaintiff's contention that her discharge was in part an act of reprisal against her by the Commission.

In accordance with the above findings and conclusions, the Court is of the opinion that Plaintiff's request for a temporary injunction must be, and it is hereby, denied. The temporary restraining order herein, as extended to July 17, 1972, is hereby dissolved. Defendants' motion to dismiss for failure to state a claim is granted.